FELIX PELTIER ads. THE RECEIVERS OF THE WASHINGTON BANKING COMPANY.

The court will take a second arrest for the same cause of action to be unlawful, unless the contrary appears from the facts and circumstances of the case. If the defendant has been guilty of fraud or contrivance to defeat the effect of the first process, or, if by the fault of the officer, or by other means not under the control of the plaintiff, or if by one of those slips or mistakes to which men of ordinary intelligence and care, are liable, the plaintiff has lost the benefit of his writ, he may hold the defendant to bail a second time. A writ of attachment and a capias, cannot be lawfully issued out of the same court at the suit of the same plaintiff, against the same defendant. It is oppressive and vexatious, and if the defendant be arrested, he will be discharged on filing common bail.

If the first arrest of the defendant be unlawful, he cannot be served with other bailable process, at the suit of the same plaintiff, while in custody, upon that illegal arrest.

Where the court granted the plaintiff leave to discontinue at any time within twenty days, and an entry of the discontinuance was made in the minutes of the court, within that time, and the amount of the taxed costs left with the clerk of the court for the defendant, or his attorney, *held* that the suit was not discontinued till the payment, or at least till the tendering of the costs to the defendant or his attorney ; and if in such case a second capias has been issued, and the defendant arrested, the arrest will be set aside, and the bail bond be delivered up to be cancelled, on the defendant filing common bail. The court will require the plaintiff to pay the costs of the application.

On or about the 30th Dec. 1833, the Washington Banking Company, sued out of the Common Pleas of Bergen county, a

foreign attachment against Peltier, for $12,000; under that writ, the Sheriff attached property, as appears by his inventory and return, to an amount between 12 and 13 thousand dollars. Afterwards and while that writ was in force, the plaintiffs in this suit, were appointed Receivers, for the creditors and stockholders of the Bank. As such, they sued the defendant in this court, by a writ returnable to the term of February last, and held him to bail in the sum of $23,339 52.

Upon the return of that writ, a rule was taken by the defendant, calling on the plaintiffs to show cause why he should not be discharged, on filing common bail. The rule was argued during the term, and on the 4th of March, the last day of the term, it was made absolute, on the ground that the affidavit for bail, was materially, and in several respects, insufficient and defective. As soon as the judgment of the court in that matter was pronounced, the counsel for the plaintiffs asked permission of the court, at any time within twenty days thereafter, to enter a discontinuance of that suit. The court granted leave to do so, but directed that the discontinuance, if entered, should be on payment of costs. Two days afterwards, viz. on the 6th of March, the Receivers or one of them, made another affidavit for bail against the defendant, for a different sum, viz. for $22,733-76, but for the same cause of action, mentioned in the first affidavit, excepting a matter of book account included in that, but omitted in this. On the next day, the 7th of March, this second affidavit was filed with the clerk of this court, a capias ad. respondendum issued thereon, and a discontinuance of the former suit entered in the minutes, as follows:—" It is ordered by the court, that this cause be discontinued, and it is hereby discontinued accordingly, on motion of, &c." At the same time the attorney for the plaintiffs, left with the clerk the amount of costs, which the clerk at his request, had drawn up and taxed, as payable to the defendant or his attorney, on the discontinuance.

When the first writ out of this court was served on the defendant, he was in the custody of the Sheriff of Bergen county, on criminal process, and he continued to be so on the 4th of March, when the order of this court was made, discharging him on common bail, at the suit of the plaintiffs. On the 5th day of March, the plaintiffs made another affidavit for bail,

against the defendant, for the sum of $12,000, for the same cause of action, for which the writ of attachment before mentioned, had been issued by the Bank, and which was then still pending. This last affidavit was filed in the clerk's office of Bergen county, and a capias issued thereupon the same day out of the Common Pleas of that county. The sheriff not then being in Hackensack, the county town, the writ was enclosed in a letter and despatched to him by a messenger, who delivered it to him at Jersey City, on the evening of that day ; at the same time and place, the attorney for the defendant, who had also gone there in pursuit of the sheriff, delivered to him a duly certified copy of the order of this court, of the 4th of March, discharging the defendant on common bail, and which was read by the Sheriff before he opened the letter covering the Common Pleas writ. Between 9 and 10 o'clock that night, the Sheriff returned to Hackensack, where he found persons in readiness to be bail for the defendant, on the criminal process. They had been waiting there for that purpose since 3 or 4 o'clock in the afternoon of that day, in consequence of the absence of the jailor, who had been sent by the plaintiffs in pursuit of the Sheriff, with the capias out of the Common Pleas, and had taken with him the keys of the prison.

The Sheriff then went into the apartment in which the defendant was confined, and told him, that by virtue of the order of this court, he was discharged from imprisonment at the suit of the plaintiffs, on the writ out of this court, but that he then arrested, and must detain him in custody, at the suit of the same plaintiffs, on a writ for $12,000, out of the Common Pleas of Bergen county. The same night the defendant gave bail for his appearance on the criminal charge, but he was detained in custody on the said writ for $12,000, and on that alone, until the 8th of March, when the second capias out of this court, was delivered to the Sheriff. At the then succeeding March term of the Common Pleas of Bergen county, the defendant put in and perfected special bail in the suit for $12,000 in that court, and at the same term, the writ by attachment was discontinued by the plaintiffs.

Upon these facts, the defendant applied to be discharged from arrest and imprisonment on the second capias out of this court.

*I. H. Williamson* and *Wall*, for defendant.

*W. Pennington* and *Southard*, for plaintiffs.

The opinion of the court was delivered by

HORNBLOWER C. J. The sum for which the defendant has been arrested, is unusually large; the questions involved are important, as relates to the rights of suitors, the liberty of the citizen and the practice of the courts; the plaintiffs are acting in a public and official capacity, and there are other circumstances connected with the case, of a peculiar character, all requiring of this court a solemn and deliberate opinion. The application is founded upon that great and salutary principle of the common law, which, when applied to proceedings of a criminal nature, is expressed in the maxim, " *Nemo bis punitur pro eodem delicto.*" (4 *Co.* 43; 2 *Hawk. P. C.* 377) but which, when used in a more general and comprehensive sense, including civil as well as criminal matters, is expressed by the terms, '*Nemo debit bis vexari pro una et eadem causa.*' *Sparry's case*, 32 *Eliz.* 5 *Co.* 61, shows that anterior to the time of Hen. 6, a second action could not be maintained for the same civil injury, though the form of the second action, and the nature of the remedy, might be of a very different character from the first, *Assignees of Anderson, a bankrupt*, v. *Campbell*, 3 *Wils. R.* 304, *&c. seq.* But it was denied by the plaintiff's counsel, that the general doctrine contended for, prohibiting a second arrest for the same cause of action, was a common law principle. They insisted that it had its origin in a simple rule of practice adopted in *B. R. in Mich. T.* 15, *Car.* 2 (found in *Rich Pr. K. B.* 69) and in *note to Brown* v. *Davis*, 1 *Chit. R.* 161, 18 *Eng. C. L. R.* 56, and that therefore it was not binding on us. Admitting that the doctrine in question was derived from the *lex forum* of the King's Bench, it has been so long recognized by all the courts at Westminster Hall, and in this country, and is so congenial to the spirit of liberty, that it must now be considered by this court as one of its fundamental rules in the administration of justice. Besides, we have adopted the practice of the Kings Bench, and are uniformly governed by its rules and principles, except so far as the legislature have marked out for us, or we, by our own rules, have prescribed to ourselves a different course of practice. But the correctness of the position, assumed by the plaintiff's counsel,

is not conceded. The rule of *M. T.* 15 *Car.* 2, instead of being the foundation of the doctrine contended for, was itself founded upon, and derived its efficiency from the ancient and common law maxim, before quoted. It is certainly true, that at the common law there was no such principle as that a man should not be *arrested* more than once for the same cause of action; for, at the common law, no man could be arrested for debt at all. But when the statute authorized a debtor to be arrested and held to bail, it followed from the reason of the thing, that as at the common law a man could not be sued twice for the same matter, so under the statute, a man ought not to be twice arrested and held to bail for the same cause of action.

But this like all other rules, was subject to qualifications and exceptions; and the numerous cases that were cited on the argument, and many others to be found in our books, are only so many instances, in which the rule has been relaxed or modified, so as to effectuate the ends of justice.

In support of this motion it was insisted by the defendant's counsel—

1st. That the defendant having been once arrested, and discharged for want of a sufficient affidavit for bail, he cannot under any circumstances, be arrested again for the same cause of action. But not a case was cited on the argument, nor can I find one that goes the length of such a proposition. On the contrary the uniform tenor of the books, seems to be, that in cases of mere mistake, or misconception of the plaintiff's remedy, a defendant may be held to bail a second time. In the case of *Belfonte* v. *Levy*, 2 *Str.* 1209, the court did not discharge the defendant from the second arrest, because the first affidavit had been defective, but because the plaintiff had been premature in issuing the second writ, before the first suit had been discontinued.

In *Bates* v. *Barry*, 2 *Wils. R.* 381, the plaintiff had brought an action on the case, instead of covenant. He discovered his mistake, discontinued on payment of costs, and issued a new writ. The court said, "this seems to be a mere mistake, and not done with any intent to *oppress* or *harrass* the defendant. If any such intent had appeared, the court would certainly have

discharged the defendant upon common bail; but it would be *too much* to say, the defendant shall lose his bail by a mere slip of his attorney." So in *Imlay* v. *Ellefsen*, 3 *East*, 309, the court say, there are many cases where a second arrest has been sustained, where the plaintiff has erroneously commenced his action, or mistaken his remedy, and has discontinued in due time, without *oppression* or *laches*. In *Archer* v. *Champneys*, 1 *Brod. & Bing.* 289, *and* 5 *Eng. Com. L.R.* 86, the court says, that cases of *non suit* and *discontinuance* are exceptions, if not *vexations*. The same principle is found in *Williams* v. *Thacker*, 1 *Brod. & Bing.* 514; *and* 5 *Eng. C. L. R.* 171. The case of *Kearney* v. *King*, 1 *Chitt. R.* 273, *and* 18 *Eng. C. L. R.* 77, and the note to that case and the cases there referred to, all show that if there is no *oppression, vexation* or *laches*, a defendant may be held to bail a second time. So again in *Brown* v. *Davis*, 1 *Chitt. R.* 161, and 18 *Eng. C. L. R.* 56, after a compromise, a defendant may be again arrested if the plaintiff's conduct has not been *vexatious*. So a second arrest was allowed, after judgment in the first action had been reversed in error, *Cartwright* v. *Kealey*, 7 *Taunt.* 192. In *Cox* v. *Chubb*, 2 *Bl. R.* 809, the plaintiff had been non prossed for not declaring; the second arrest was set aside; but, the court put it expressly on the ground that the plaintiff's conduct had been vexatious. Accordingly in *Peck* v. *Hozier, & al.* 14 *Johns. R.* 347, the court say, where plaintiff is *non prossed* for *not declaring*, or *discontinues* on payment of costs, he *may* arrest the defendant de novo, unless there is evidence of *oppression* or *vexation*. It is not indeed necessary, that the plaintiff's motive or intention must be to *vex* or harrass a defendant. If through such unskilfulness, inattention or laches, as amount to *crassa negligentia,* he subjects a defendant to a second arrest, it will be set aside, *Wheelwright* v. *Joseph*, 5 *Maul. & Selw.* 93. As however, the rule of law forbids a second arrest for the same cause of action, such second arrest is in all cases prima facie, unlawful; and the court must take it to be so, unless the contrary appears from the facts and circumstances of the case—(see *Archer* v. *Champneys*, and *Williams* v. *Thacker*, above cited.) If therefore the defendant has himself been guilty of fraud or contrivance to defeat the effect of the first process (*Olmius* v. *Delaney*, 2 *Str.* 1216) or if

by the fault of the officer, or by other means not under the control of the plaintiff, (*Housin* v. *Barrow*, 6 *T. R.* 218) or if, by one of those slips, or mistakes, to which men of ordinary intelligence and care, are liable, the plaintiff has lost the benefit of his writ, he may hold the defendant to bail a second time; *Kitchen & al.* v. *Campbell*, 3 *Wils. R.* 308—9; *Whalley* v. *Martin*, *Barnes' notes*, 63; *Tarton* v. *Hayes*, 1 *Str.* 439, and cases already cited.

If, therefore, the defendant's case rested alone on the fact, that the first affidavit for bail was defective, the court being satisfied, as they are, that it was a mere slip of the attorney, would not, on that ground, discharge the defendant; but

2d. It was insisted, that the conduct of the plaintiffs in this case has been vexatious and oppressive; that anticipating the discharge of the defendant from the first arrest, they *contrived*, by means of the writ for twelve thousand dollars, out of the Common Pleas, to keep him in confinement until they could get a regular writ out of this court.

It is not easy to shut our eyes against the design and the effect of that proceeding; nevertheless, if it was a lawful one, the plaintiffs have a right to the benefit of it. It is said, however, in the first place, that the bank having instituted a proceeding by attachment against the defendant for the same debt, and the receivers having, by force of the statute of 16th February, 1829, *Harr. Comp.* 218, *Sec.* 17, entire control over that suit, and a right to substitute themselves as plaintiffs on the record, or to continue the same in the name of the bank, they could not, while that suit was pending, arrest him on a *capias* for the same cause of action. To this it was answered, first. That the attachment and subsequent suit by *capias*, for the same debt, being in another court, we could not adjudicate upon the regularity of those proceedings. But the answer is not satisfactory. It is true we can make no order, touching those suits, that will, in any way, conclude, or affect, them. But if we see that the process of other courts has been improperly used, for the purpose of giving effect to our own, we can so declare, and set aside what has been done on our own writ, leaving the plaintiffs to stand, or fall, according to their rights, in such other court. It is, however, answered again, secondly, That an attachment is

no bar to a suit by *capias*, by the same plaintiff for the same debt. If by this is intended that both suits may be commenced at the same time, or both be pending and proceeded in at once, I very much doubt it. The case of *Wood* v. *Thompson*, 5 *Taunt.* 851, *and* 1 *Eng. C. L. R.* 286, *and Bromley* v. *Peck*, in a note to that case, cited by the plaintiffs' counsel, do not support the position. In those cases it was indeed held that the plaintiff in attachment might *abandon* that proceeding, and then arrest the defendant; and in both instances the plaintiffs had done so. In *Bromley* v. *Peck*, it is expressly stated, that the plaintiff had withdrawn the attachment and *paid the costs*, under an order of the court. But in the case now before us, both the attachment and the suit by *capias*, for the same debt, were pending in the same court, at the same time. The cases just cited were proceedings, according to the custom of London, in a court of inferior jurisdiction; but suits by attachment, under our statutes, are of a different and much more important character. The writ once executed, fastens, like an *incubus*, upon all a man's property, rights and credits, and cannot be shaken off by any thing the defendant can do, short of paying the demand. If he puts in bail to the suit, his whole property remains in the custody of the law, and he cannot even get into possession of it without giving bond, with security, for its forthcoming. All the cases show that the real question is, whether the proceedings are vexatious and oppressive. But it is difficult to conceive of any thing more so, than by one writ to seize upon, and impound, all a man's estate, and then the moment he comes within our jurisdiction, (perhaps for the very purpose of contesting the claim) by another writ, and that too out of the same court, by the same plaintiff, and for the same debt, arrest his person, and confine him to prison for the want of bail; of the means of procuring which he has already been deprived; or if he has still the means of getting bail, compel him to put in bail to two suits, by the same plaintiff, for the same debt; for, should he even give bail, or lie in jail upon the *capias*, he must yet put in bail to the attachment, or be condemned in that suit unheard. In *Barnes assig.* v. *Moton*, cited in *Kinnear* v. *Tarrant*, 15 *East.* 631, Lord Mansfield said the true inquiry was, " whether the assignee could not proceed in the action which had been brought by the

bankrupt ; if he could, then the second action would be vexatious." In the case before us, the suit by attachment, commenced by the bank, was, by force of the statute, as completely the suit of the receivers as if they had been, by name, the plaintiffs on the record ; another suit, then, by them, for the same debt, both requiring bail, has, to say the least of it, to my mind, very much the appearance of *oppression* under color of legal process.

But whether the suit in the Common Pleas by *capias*, was lawful or not, it was insisted.

3d, That the first arrest of the defendant being unlawful, he could not be served with other bailable process, at the suit of the same plaintiffs, while in custody, upon that illegal arrest.

Of the correctness of that position, there can be no doubt ; the cases are all to that effect. *Barlow* v. *Hall*, 2 *Anstr.* 461 ; *Loveridge* v. *Plaistow*, 2 *H. Bl. R.* 29 ; *Faber* v. *Walker*, 1 *Chitt. R.* 579, and 18 *Eng. C. L. R.* 169, and in note, *Wilkinson* v. *Jacques*, 3 *T. R.* 392 ; *Howson* v. *Walker*, 2 *Bl. R.* 823 ; *Davies* v. *Chippendale*, 2 *Bos. and Pul.* 282. Hence it was argued, that even if the writ, for twelve thousand dollars, was itself a regular and lawful writ, the service of it on the defendant, on the 5th of March, while he was wrongfully imprisoned on the first writ, out of this court, was unlawful and void ; and that consequently, the service on the defendant, of the second writ out of this court, on the 8th of March, while he was wrongfully imprisoned on the twelve thousand dollar writ, was equally unlawful and void. This argument would be conclusive, if, on the 5th of March, when the twelve thousand dollar writ was served, the defendant had been in custody on no other process than the first writ out of this court. But the defendant was *then* a lawful prisoner at the suit of the state ; it was therefore competent for the plaintiffs to lodge a valid writ against him then, however unlawful their first writ might have been. But if the twelve thousand dollar writ was itself unlawful, on the ground of the existing suit by attachment, then the defendant ought to be discharged ; because when the second writ out of this court was served on the defendant, viz. on the 8th of March, he was, and had been, from the night of the 5th of March, detained in custody on the twelve thousand dollar writ only. On this point, however, I give no opinion ; but the

4th, And last objection to the arrest, is insuperable, viz. that the plaintiffs were premature in issuing the second *capias* out of this court; that the first suit was not then, and has not yet been, discontinued according to law.

It is clear that the plaintiffs did not comply with the terms of the rule, granted by this court, in February term last. It was for leave to discontinue, at any time, within twenty' days, on payment of costs.' The rule ought to have been so entered, and the costs taxed and paid, or, at least, tendered to the defendant or his attorney, before the second writ was issued; *because*, until that was done, the suit was still pending. The books of practice, and the authorities are clear, unequivocal,· and uniform, on this subject. 1 *Tidd, Pr.* 629 ; 1 *Archb. Pr.* 46 ; *Belfonte* v. *Levy*, 2 *Str.* 1209 ; *Molling* v. *Buckholtz*, 3 *Maul. & Selw.* 153 ; *Brandt* v. *Peacock*, 3 *Dowl. & Ryl.* 2, *& 16 Eng. C. L. R.* 127 ; *Whitmore* v. *Williams*, 6 *T. R.* 765 ; *Bristow* v. *Haywood*, 4 *Camp. N. P.* 213 ;. *White* v..*Gomperty*, 5 *Barn. & Alder.* 905, *& 7 Eng. C. L. R.* 297 ; *Stokes* v. *Woodeson*, 7 *T. R.* 6 ; *Imlay* v. *Ellefsen*, 3 *East.* 309.

Instead, however, of entering the rule in the conditional, which is the usual and proper form; the plaintiff entered an absolute discontinuance, and without any notice to the defendant, or his attorney, left the costs, upon an *ex parte* taxation, with a person not authorized to receive it, at a place, more than sixty miles distant from the defendant, or his attorney. But it is said this is a strict and technical objection ; that if the rule for a discontinuance had not been entered, or had been misentered, the court would on motion, in due season, permit it to be entered, or the entry to be corrected ; that payment of costs to the clerk was a substantial compliance with the condition requiring costs to be paid ; that if they had given notice of the discontinuance, and paid the costs to the defendant's attorney, it would have operated as a notice to the defendant of their intention to sue out another writ.

It is true the objection is, in one sense, a technical one ; but we have no right to overrule it on that account. Plaintiffs are nonsuited, judgments are given, causes are put off, and many other things done in the progress of suits, deeply affecting, and often concluding, the rights of parties, upon grounds equally technical.

But here the liberty of a citizen is involved, and if, in any case, a party has a right to insist upon a strict compliance with the rule of law and practice of the court, he has such right in this case. Suppose an affidavit had been made, but not actually filed, before the arrest; or that the clerk had neglected to seal the writ; an objection, on either of these grounds, would be as technical in the same sense as the one under consideration. It would be matter of form that might be supplied. But could we overrule it on that ground? I apprehend not. By so doing we should prostrate all rule, and not-know where to stop. There are, it is true, many nice and purely technical objections, to which the court will lend an unwilling ear—such as do not at all affect the rights, or change the condition, of parties. This is a different case. It lies at the foundation of the plaintiff's proceedings; upon certain conditions, they had a right to arrest the defendant, but they imprison him first, and then offer to comply with the conditions. This will not do.

The arrest must be set aside, and the bail bond, (if one was given) be delivered up to be cancelled, on the defendant's filing common bail; and the costs of this application must be paid by the plaintiffs.

CITED in *Sloan* v. *Somers,* 3 *Harr.* 48.